**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

PROGRESSIVE STERILIZATION, LLC,   )
a Florida Limited Liability Company,    )
                                  )
        Plaintiff,               )
                                  )
        v.                     )      Civil Action No. 19-627-CFC
                                  )
TURBETT SURGICAL LLC, a Delaware   )
Limited Liability Company and ROBERT   )
TURBETT, individually,         )
                                  )
        Defendants.        )

## REPORT AND RECOMMENDATION

In this case, Plaintiff Progressive Sterilization, LLC ("Plaintiff") brings claims of patent infringement and various other federal and state law claims against Defendants Turbett Surgical LLC and Robert Turbett (collectively, "Defendants"). Pending before the Court are two motions: (1) Defendants' motion to dismiss ("Motion to Dismiss"), (D.I. 21), filed pursuant to Federal Rule of Civil Procedure 12(b)(6), in which Defendants seek to dismiss the Fourth through Thirteenth Causes of Action in Plaintiff's operative First Amended Complaint ("FAC"); and (2) Plaintiff's motion to exclude ("Motion to Exclude") certain exhibits supplied by Defendants in support of the Motion to Dismiss, filed pursuant to Federal Rule of Civil Procedure 12(d), (D.I. 30). For the reasons that follow, the Court recommends that Defendants' Motion to Dismiss be GRANTED-IN PART and DENIED-IN-PART, and orders that Plaintiff's Motion to Exclude be DENIED.

## I.    BACKGROUND

### A.    Factual Background

Plaintiff is a Florida limited liability company. (D.I. 18 ("FAC") at ¶ 12) Its principals are Maryellen Keenan and Michele Mauzerall. (*Id.* at ¶ 2) Defendant Turbett Surgical LLC

("Turbett Surgical") is a Delaware limited liability company. (*Id.* at ¶ 17) Defendant Mr. Turbett founded Turbett Surgical in 2013, and is presently its Chief Executive Officer and President. (*Id.* at ¶¶ 17-18, 81)

Around 2009, Clarence and Barry Snyder invented certain sterilization technology involving the use of a multiple tray sterilization system, which was originally called "SCORES" (an acronym for "Self-Contained Operating Room Equipment Sterilization[.]" (*See id.* at ¶¶ 3-4) SCORES units "greatly reduce the time, expense, and health hazards associated with delivering sterile surgical instruments to the [operating room] from the hospital's sterile processing department . . . and back again." (*Id.* ¶ 3) In that year, the Snyders also founded Plaintiff's predecessor company, AmMed Surgical ("AmMed"). (*Id.* at ¶ 4)

In 2011, AmMed was in the process of obtaining clearance from the United States Food and Drug Administration ("FDA") for its product and was beginning its sales and marketing efforts. (*Id.* at ¶ 31) Around that time, AmMed engaged Mr. Turbett as an "authorized promoter of SCORES units as well as [to] assist with commercialization efforts generally[.]" (*Id.* at ¶ 32) In December 2011, AmMed sent Mr. Turbett an e-mail containing a confidentiality agreement; Plaintiff alleges that Mr. Turbett signed this agreement and returned it to AmMed, though Plaintiff does not have a signed copy in its possession. (*Id.* at ¶ 35; *id.* ex. A) In 2012, Mr. Turbett was privy to certain confidential information of AmMed regarding the SCORES product, such as specific account requirements and product pricing issues, efforts to obtain FDA clearance to market and sell the product, development of product protocols, and the like. (*Id.* at ¶¶ 36-44)

Although AmMed and Mr. Turbett had contemplated entering a "more formal written agreement" to memorialize their business relationship, (*id.* at ¶ 34), they were never able to do so, (*id.* at ¶ 45). In October 2013, Mr. Turbett gave notice that he and his companies would no

longer be promoting AmMed's products; in that same communication, he acknowledged the need to return AmMed's proprietary sales and promotional material (and represented that his associates would do so). (*Id*.)

In August 2014, AmMed filed for bankruptcy, (*id*. at ¶ 69), and under the bankruptcy plan, it "sold and transferred substantially all of its tangible and intangible assets to [Plaintiff,]" (*id*. at ¶ 70). Presently, Plaintiff markets its commercial products as the "CUBE" system; Plaintiff sells the CUBE sterilization cabinet, transfer cart, and related filters and accessories. (*Id*. at ¶ 73)

The parties had no further dealings until April 3, 2016, when Ms. Keenan and Ms. Mauzerall attended a trade show in California for the Association of periOperative Registered Nurses ("AORN"). (*Id*. at ¶ 75) There, Defendants displayed their sterilization device, known as "the POD." (*Id*.) Upon seeing the POD, Plaintiff's representatives began to suspect that it incorporated or relied upon Plaintiff's trade secrets and confidential information. (*Id*. at ¶¶ 76-80) Plaintiff began to research what it could about the POD through publicly available sources, and the results of that research prompted it to bring the instant suit. (*Id*.)

Further relevant facts related to resolution of the Motion to Dismiss will be set out as needed in Section III.

### B.    Procedural Background

Plaintiff filed this action on April 3, 2019—three years to the day after its principals had observed Defendants' competing POD device at the AORN conference. (D.I. 1; FAC at ¶ 75) Plaintiff filed the FAC on August 9, 2019. (D.I. 18) Defendants filed the Motion to Dismiss on September 6, 2019, (D.I. 21), and Plaintiff filed its Motion to Exclude on October 18, 2019, (D.I. 30). Those motions have been referred to the Court for resolution by United States District Judge Colm F. Connolly. (D.I. 25; D.I. 33) Briefing on the motions was completed on

November 22, 2019, (D.I. 37), and at Plaintiff's request, (D.I. 39), the Court heard argument on the motions on March 27, 2020, (D.I. 44 (hereinafter "Tr.")).

## II.     LEGAL STANDARD

Defendants' Motion to Dismiss, which will be the Court's primary focus below, was brought pursuant to Rule 12(b)(6). The Court will review that Rule 12(b)(6) motion pursuant to the familiar two-part analysis set out in cases like *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009); it incorporates the relevant legal standard set out in *Fowler* by reference herein.

## III.    ANALYSIS

Plaintiff's FAC includes a total of 13 causes of action; with their Motion to Dismiss, Defendants do not challenge the first three causes of action, which are for patent infringement, but do challenge the Fourth through Thirteenth Causes of Action (the "non-patent causes of action").[1] The Court will first take up Defendants' arguments that certain of the non-patent causes of action should be dismissed because they are time barred, and then will address Defendants' remaining arguments regarding plausibility (to the extent necessary).

### A.     Statute of Limitations Defenses

Defendants argue that Plaintiff's two trade secret misappropriation claims (the Fourth Cause of Action, which alleges a violation of the Delaware Uniform Trade Secrets Act, or "DUTSA", and the Eleventh Cause of Action, which alleges a violation of the federal Defend Trade Secrets Act, or "DTSA") and four other Delaware state law causes of action (the Fifth Cause of Action, which alleges breach of fiduciary duty, the Eighth Cause of Action, which

---

[1]     With regard to the Sixth and Seventh Causes of Action (for Aiding and Abetting and Conspiracy, respectively), (FAC at ¶¶ 156-75), Plaintiff has stated that it is no longer pressing those claims and that they can be dismissed. (D.I. 29 at 1 n.2; *see also* D.I. 22 at 8-10) Thus, the Court recommends that the Motion to Dismiss be GRANTED as to these claims.

alleges breach of contract, the Ninth Cause of Action, which alleges tortious interference with contract, and the Tenth Cause of Action, which alleges unjust enrichment), are barred by the applicable statutes of limitations. (D.I. 22 at 13-17; D.I. 34 at 2-6; *see also* D.I. 29 at 18-20) The Court will analyze the trade secret misappropriation claims separately from the other four claims with regard to this issue, taking up the latter set of claims first.

### 1.     The Fifth, Eighth, Ninth and Tenth Causes of Action

For these four causes of action, the applicable statute of limitations is three years, as is set forth in Del. C., tit. 10, § 8106 ("Section 8106"). (D.I. 22 at 16; D.I. 29 at 19) However, unlike the trade secret misappropriation claims discussed below, these causes of action are not subject to a discovery rule. (D.I. 22 at 16) That is, these causes of action "'accrue[]' under Section 8106 at the time of the wrongful act, even if the plaintiff is ignorant of the cause of action." *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 319 (Del. 2004) (contract).[2] A complaint may be dismissed on a Rule 12(b)(6) motion to dismiss "when it is *facially clear* both that the complaint was filed after the statute of limitations had run and that the defendants raised the affirmative defense in the motion to dismiss." *Manuel v. Mears*, 947 F. Supp. 2d 426, 429 (D. Del. 2013) (emphasis added) (citing *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1385 n.1 (3d Cir. 1994)).

Applying this rule to Plaintiff's claims as they are set out in the FAC, it is clear that the claims for breach of fiduciary duty and tortious interference with contract began to accrue prior

---

[2]      *See also E.I. Du Pont de Nemours & Co. v. Monsanto Co.*, No. CIV.A. 00-359-SLR, 2001 WL 652019, at *1 (D. Del. Feb. 14, 2001) (breach of contract, breach of fiduciary duty and tortious interference with contract claims) (citing cases); *Vichi v. Koninklijke Philips Elecs. N.V.*, Civil Action No. 2578-VCP, 2009 WL 4345724, at *15-16 (Del. Ch. Dec. 1, 2009) (unjust enrichment claims).

to April 3, 2016 (that is, prior to the date that Plaintiff's principals observed the POD at the AORN conference, a date exactly three years from the date of the filing of the Complaint in this case). As to the breach of fiduciary duty claim, Plaintiff pleads that Mr. Turbett breached his fiduciary duties by, among other things, "improperly using and disclosing the Confidential Information . . . in the planning of [and] design of . . . Turbett Surgical's POD and its filters and accessories." (FAC at ¶ 149(a)) "[P]lanning" and "design" of the POD necessarily took place prior to April 3, 2016, when Plaintiff's representatives first saw the completed POD device, and so it is "facially clear" that this alleged breach took place prior to that date, too.[3] As to Plaintiff's tortious interference with contract claim, Plaintiff alleges that Turbett Surgical performed certain offending conduct "within a few months of [Mr.] Turbett's departure from AmMed"—that is, in 2013 or 2014. (*See id.* at ¶ 189) For these reasons, Plaintiff's Fifth and Ninth Causes of Action are clearly time barred, and so the Court recommends that the Motion to Dismiss be GRANTED as to them.[4]

But as to the Plaintiff's claims for breach of contract and unjust enrichment, the Court has not been persuaded that they are clearly barred by the statute of limitations. Both of these causes of action are premised in part on Defendants' allegedly having wrongly "us[ed]" what the FAC refers to and otherwise defines as "the Confidential Information and Trade Secret Technology[.]"

---

[3]        In light of the Court's decision here, the Court need not reach other areas of dispute as to the sufficiency of the breach of fiduciary duty allegations, which were discussed in the parties' briefing and during oral argument. (D.I. 22 at 10-12; D.I. 29 at 14-15; Tr. at 30-46)

[4]        At oral argument, Plaintiff, for the first time, raised an argument that in some way, the doctrines of equitable tolling or fraudulent concealment might serve to blunt Defendants' statute of limitations arguments in this regard. (Tr. at 78-81) Such arguments were not found in Plaintiff's answering brief (and should have been), (D.I. 29 at 19-20), and thus, they are waived for purposes of resolving this motion. *See Horatio Washington Depot Techs. LLC v. TOLMAR, Inc.*, Civil Action No. 17-1086-LPS, 2018 WL 5669168, at *7 n.4 (D. Del. Nov. 1, 2018) (citing cases)).

(*Id.* at ¶¶ 182 (breach of contract), 196 (unjust enrichment); *see also id.* at ¶ 46) While such wrongful "use" of Plaintiff's Confidential Information and Trade Secret Technology *could* refer to use occurring before April 2016 (i.e., use related to the planning and design of the relevant sterilization devices and accessories), it could also simply be meant to refer to other wrongful uses occurring solely after that month. Defendants bear the burden of persuasion on their Rule 12(b)(6) motion, *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005), and they have not met that burden as to these two counts.

### 2. Trade Secret Misappropriation Claims (Fourth and Eleventh Causes of Action)

The DTSA and DUTSA both provide that an action must be brought within three years after the misappropriation is "discovered or by the exercise of reasonable diligence should have been discovered." 18 U.S.C. § 1836(d); Del. Code tit. 6, § 2006. Plaintiff asserts that the appropriate triggering date here is the April 3, 2016 date when its principals observed the POD device at the AORN conference, which was "the first time they saw and could confirm that [Mr. Turbett] had begun to sell a competing device, and it was also the first knowledge of any kind of the POD's design and operation." (FAC at ¶ 75; *see also* D.I. 29 at 18-19) To the contrary, Defendants argue that Plaintiff should have diligently discovered the basis for its trade secret misappropriation claims well earlier than that date. Defendants' argument here relies on certain of Plaintiff's patent prosecution activities, as is further set out below.

With regard to this issue, the record shows that in September 2015, an attorney who appears to be associated with Ms. Mauzerall and Ms. Keenan submitted an Information Disclosure Statement ("IDS") to the United States Patent and Trademark Office ("USPTO") in the prosecution of United States Patent Application No. 14/644,094. (D.I. 22 at 15; D.I. 23, ex. G) In this IDS, the filer acknowledged as prior art a patent application, titled "Sterilizing

Method and Appartus[,]" which listed Mr. Turbett as the inventor.  (D.I. 23, ex. G; *see also id.*, ex. B (U.S. Patent Application No. 2015/0209456, or the "'456 application"))  In Defendants' view, this IDS serves as an admission that Plaintiff was (or should have been) aware of Defendants' misappropriation at least as of September 2015, thus barring any claim for misappropriation filed after September 2018.  (D.I. 22 at 15-16; D.I. 34 at 2-4; Tr. at 57-65)[5]

However, even after considering the above referenced documents/facts, the Court cannot clearly conclude that the trade secret misappropriation claims are barred by the applicable statute of limitations.  Too many questions—the resolution of which would be important to a finding that the defense has been established—are left unanswered by this record.  For example, in their briefing, Defendants asserted that the '456 application concerned "the sterilization cabinet that is

---

[5]      In Plaintiff's Motion to Exclude, it seeks to prevent the Court from considering at all the IDS and the '456 application, because they are "'matters outside the pleadings[.]'"  (D.I. 31 at 2 (quoting Federal Rule of Civil Procedure 12(d))  But the great weight of legal authority runs against Plaintiff here.  It is well acknowledged that in resolving a Rule 12(b)(6) motion the Court "may properly look at public records[,]" like portions of a patent's prosecution history, "in addition to the allegations in the complaint."  *O'Boyle v. Braverman*, 337 F. App'x 162, 164 (3d Cir. 2009); *cf. Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1008 n.2 (Fed. Cir. 2018) ("On a [Rule 12(c)] motion for judgment on the pleadings, however, the court may consider matters of public record.  Prosecution histories constitute public records.") (internal quotation marks and citations omitted); *see also WesternGeco v. Ion Geophysical Corp.*, Civil Action No. 09-cv-1827, 2009 WL 3497123, at *5 (S.D. Tex. Oct. 28, 2009) (in resolving a motion to dismiss, looking to the publication date of a PCT patent application as the date upon which the defendant's breach of contract and conversion claims began accruing).  Thus here, the Court will DENY Plaintiff's Motion to Exclude and acknowledge the public existence of the IDS and the '456 application, along with the existence of undisputed facts that are clearly inherent to those documents (i.e., that the IDS was filed in September 2015 and that it listed the '456 application on its face, or that the '456 application itself concerned a "Sterilizing Method and Apparatus" and listed Mr. Turbett as the inventor).  (D.I. 23, exs. B, G; Tr. at 71).  But as the Court will explain herein, it will not consider these documents for other purposes (i.e., it will not resolve disputes about the content of those documents, nor will it resolve disputes about what inferences a reasonable person might have drawn from those documents).  *See In re Envision Healthcare Corp.*, Civil Action No. 18-1068-RGA, 2019 WL 3494407, at *10 (D. Del. Aug. 1, 2019); *cf. In re Horsehead Holding Corp. Secs. Litig.*, Civil Action No. 16-292-LPS-CJB, 2018 WL 4838234, at *10 (D. Del. Oct. 4, 2018).

now the subject of Plaintiff's [misappropriation] claims." (D.I. 34 at 3) But during oral argument, Defendants' counsel seemed to back away from that assertion, noting only that the Court could conclude that the application "pertains to a sterilization cabinet[.]" (Tr. at 69; *see also id.* at 72) Nor is it at all clear that the '456 application includes reference to any of the trade secrets that Plaintiff lists in the FAC. (Tr. at 69; *see also* D.I. 29 at 19; Tr. at 72)[6] Moreover, the Court does not have a good handle on whether or to what extent Ms. Mauzerall or Ms. Keenan (and thus, Plaintiff) were familiar with the content of the IDS that referenced this application.

Simply put, it is not clear to the Court from this record that Plaintiff knew, or by the exercise of reasonable diligence should have discovered, that Defendants were misusing Plaintiff's trade secrets as of September 2015. *See Synopsys, Inc. v. Magma Design Automation, Inc.*, No. C-04-3923 MMC, 2005 U.S. Dist. LEXIS 46595, *21-22 (N.D. Cal. May 18, 2005) (denying the defendant's motion to dismiss and rejecting its argument that certain of its own public statements served to put the plaintiff on notice of its alleged misappropriation of plaintiff's technology, because "[the defendant] ha[d] made no effort to compare [the plaintiff's] alleged proprietary information to the content of these statements"). Resolution of whether that is so, and whether the IDS and the '456 application demonstrate this, would involve delving into the details of those documents and resolving disputes about what the documents reasonably show or do not show. It would be inappropriate to engage in such a process in resolving a motion to

---

[6] "[Defendants' Counsel]: We are not asking [the Court] to read through the applications and determine whether each of the purported trade secrets are included there. We're asking you to take notice that the application was published on that date, that it pertains to a sterilization cabinet, that [] [P]laintiff knew about it as of or shortly after that date, and that that was enough to put it on notice that it should be investigating at that time[.]" (Tr. at 69)

dismiss.[7]  Thus, the Court cannot recommend grant of Defendants' Motion to Dismiss on this ground.

## B.    Defendants' Other Rule 12(b)(6) Arguments

### 1.    Trade Secret Misappropriation Claims (Fourth and Eleventh Causes of Action)

Defendants next make additional challenges to the sufficiency of Plaintiff's allegations regarding its two trade secret misappropriation claims (the Fourth and Eleventh Causes of Action), which are brought against both Defendants.  (FAC at ¶¶ 131-41, 200-11)  Here, Defendants assert that the claims are deficient because:  (1) Plaintiff fails to identify its trade secrets with reasonable particularity, and (2) Plaintiff fails to plead that Plaintiff or AmMed made reasonable efforts to maintain the secrecy of those trade secrets.  (D.I. 22 at 6-8; D.I. 34 at 6-8)[8]

---

[7]    In its briefing and at oral argument, Defendants relied on this Court's prior decision in *Raza v. Siemens Med. Sols. USA Inc.*, 607 F. Supp. 2d 689 (D. Del. 2009), where the Court granted a defendant's Rule 12(c) motion for judgment on the pleadings, and dismissed the plaintiff's trade secret misappropriation claim, in part because the defendant had filed for patent protection regarding the technology at issue more than three years prior to the filing of the complaint, *id.* at 692-94.  (D.I. 22 at 15-16; Tr. at 60-61)  But *Raza* is distinguishable here on two critical grounds.  First, the patent application at issue in *Raza* was published *after* the defendant publicly launched (to great fanfare and press coverage) an actual product that contained the plaintiff's trade secrets; such facts, which were important to the decision in *Raza*, are not at play here.  *Id.*  Second, the plaintiff in *Raza* had acknowledged that the defendant's product embodied his trade secrets, and that one could have determined this based on the "[defendant's] public papers, press releases, patents and patent applications[.]"  *Id.* at 691 (internal quotation marks and citation omitted)).  In contrast here, the record does not clearly show that reference to Plaintiff's trade secrets had been made a part of the public record (i.e., in the '456 application) prior to the date when Plaintiff asserted it had first come to learn about the misappropriation at issue.

[8]    In its opening brief, Defendants appeared to challenge these claims on two other grounds:  (1) that Plaintiff failed to show how its trade secrets were misappropriated, (D.I. 22 at 6-7; *see also* D.I. 29 at 12-13), and (2) that Plaintiff's trade secret claims are not actionable under the DTSA because they accrued prior to the enactment of the DTSA, (D.I. 22 at 8; *see also* D.I. 29 at 13-14).  However, after Plaintiff pushed back on these issues in its answering brief, Defendants did not further address the issues in their reply brief.  (*See* D.I. 34)  Thus,

With regard to the first issue, the parties agree that to state a claim for misappropriation of trade secrets under DTSA or DUTSA, "a plaintiff must identify a trade secret with sufficient particularity so as to provide notice to a defendant of what he is accused of misappropriating and for a court to determine whether misappropriation has or is threatened to occur." *Flexible Techs., Inc. v. SharkNinja Operating LLC*, Civil Action No. 18-348-CFC, 2019 WL 1417465, at *2 (D. Del. Mar. 29, 2019) (internal quotation marks and citation omitted). However, courts have also noted that "'trade secrets need not be disclosed in detail in a complaint alleging misappropriation for the simple reason that such a requirement would result in public disclosure of the purported trade secrets.'" *Id.* (quoting *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 755 F. Supp. 635, 636 (D. Del. 1991)).

Paragraph 46 of the FAC lists several types of information regarding "the design, manufacture, FDA clearance, marketing and sale of SCORES units . . . multiple tray sterilization system technology, and related intellectual property[,]" which it describes as "'Trade Secret Technology'[] and . . . 'Confidential Information[.]'" (FAC at ¶ 46; *see also id.* at ¶ 207) Several categories of such information are then described with sufficient particularity to give the reader an understanding not only of the product that these alleged trade secrets relate to (SCORES units), but also the underlying aspects of those products that are really at issue. (*Id.* at ¶ 46(d) ("Protocols for validating performance of multiple tray sterilization systems sufficient to obtain FDA 510(k) clearance, including . . . [m]ethodology for analyzing microbial barrier properties; . . . [m]ethodology for verifying sterilization efficacy . . ."); *id.* at ¶ 46(e) ("Methodology for combining filters to achieve FDA-compliant microbial barrier properties . .

Defendants have abandoned these arguments and the Court will not further address them herein. *Cf. Blakeman v. Freedom Rides, Inc*., Civil Action No. 12-416-LPS-CJB, 2013 WL 3503165, at *13 (D. Del. July 10, 2013) (citing cases).

."); *id.* at ¶ 46(f) ("Non-public submissions and content of 510(k) Premarket Notification for

SCORES units"); *id.* at ¶ 46(g) ("Improvements to the SCORES transfer cart, including

modification of wheel base and improved autoclave docking and transfer cart self-locking

features"))[9]  This is enough to meet the pleading requirements for specificity as to trade secret

misappropriation claims.  *See Eastman Chem. Co. v. AlphaPet Inc.*, Civ. Action No. 09-971-

LPS-CJB, 2011 WL 5402767, at *6 (D. Del. Nov. 4, 2011) ("When trade secrets are identified

by reference to a trade name, such as IntegRex™, courts in this circuit have refused to dismiss

misappropriation claims."); *Synthes, Inc. v. Emerge Med., Inc.*, Civil Action No. 11-1566, 2012

WL 4205476, at *28 (E.D. Pa. Sept. 19, 2012) (finding sufficient allegations which described,

*inter alia*, how the plaintiff "provided [the defendant] with substantial, specialized training on

the technical aspects of [certain surgical products] and the medical procedures in which these

products [were] used").[10]

    With regard to the second issue, under both the DTSA and the DUTSA, information

cannot constitute a "trade secret" unless the owner of the information took reasonable efforts to

keep the information secret.  *See* 18 U.S.C. § 1839(3)(A); Del. Code, tit. 6, § 2001(4).

---

[9]    Indeed, by the time of oral argument, Defendants' counsel conceded that at least some of the content of paragraph 46 did set out alleged trade secrets with sufficient specificity. (Tr. at 13-14)

[10]    As to Defendants' gripe that Plaintiff has improperly "lump[ed]" these items together by designating them as both "Trade Secret Technology" and "Confidential Information," (D.I. 22 at 6-7; D.I. 34 at 6-7), this argument fails to recognize that Plaintiff may plead in the alternative here, (D.I. 29 at 8-9), and that "[i]f a party makes alternative statements, the pleading is sufficient if any one of them is sufficient[,]" Fed. R. Civ. P. 8(d)(2); *see also Int'l Bus. Machs. Corp. v. Expedia, Inc.*, Civil Action No. 17-1875-LPS-CJB, 2019 WL 1571680, at *4 (D. Del. Apr. 11, 2019), *report and recommendation adopted*, 2019 WL 4635137 (D. Del. Sept. 24, 2019); (Tr. at 7).

Defendants argue that Plaintiff has not pleaded sufficient facts to plausibly allege that such efforts were made as to the trade secrets at issue here, but the Court disagrees.

For one thing, Plaintiff has alleged not only that AmMed generally "maintained [the trade secrets at issue] in confidence[,]" (FAC at ¶ 47; *see also id* at ¶¶ 133, 202), but that AmMed: (1) sought and obtained confidentiality agreements from many of those persons who had access to the trade secrets; or (2) made those persons otherwise aware that they must keep the material secret. For example, the FAC alleges that:

- AmMed "consistently sought" confidentiality agreements from its outside vendors, (*id*. at ¶ 48), and "consistently obtain[ed]" such agreements from those vendors, (*id*. at ¶ 203). (The FAC notes that Plaintiff has continued this practice.). (*Id*.)

- When AmMed hired a consultant to develop protocols for certain testing to be completed by the FDA on the technology at issue, that consultant was "subject to strict confidentiality requirements." (*Id.* at ¶ 41) Similarly, AmMed hired two entities to conduct sterilization-related testing on the product "on a confidential basis[.]" (*Id*. at ¶ 42)

- To the extent that AmMed was required to make submissions of purported trade secret information to the FDA, (*see id.* at ¶ 46), those submissions were made and kept in confidence, (*id.* at ¶ 43 (noting that material relating to FDA submissions was "non-public and confidential information"); *see also* D.I. 29 at 12).

- AmMed required "all potential investors, promoters and distributors to sign [a] Confidentiality Agreement[.]" (FAC at ¶ 53)

- Ms. Keenan signed a confidentiality agreement before obtaining any trade secret information (an agreement that is attached to the FAC). (*Id*. at ¶ 52 & exs. B-1-B-2).[11]

---

[11] It is true, as Defendants note, (D.I. 34 at 7), that there are no allegations in the FAC as to whether Ms. Mauzerall ever signed a confidentiality agreement. (At oral argument, Plaintiff's counsel claimed that she did.). (Tr. at 25) Yet while that may provide fodder for an argument at the summary judgment stage or at trial, this fact alone (in light of the other allegations discussed herein), is not reason to grant a motion to dismiss these claims.

- When AmMed and Mr. Turbett ended their relationship, Mr. Turbett understood and acknowledged that he had to "return AmMed's proprietary sales and promotional materials[.]" (*Id.* at ¶ 45)

Additionally, and despite Defendants' arguments to the contrary, (D.I. 22 at 7; D.I. 34 at 7), the Court concludes that Plaintiff has plausibly alleged that Mr. Turbett himself signed a confidentiality agreement prior to receiving access to the trade secrets at issue. In paragraph 35 of the FAC, Plaintiff alleges:

> On December 29, 2011, Barry [Snyder] sent Robert [Turbett] an email titled "NDA" attaching a Confidentiality Agreement between AmMed and Robert, a true and correct copy of which is attached as Exhibit A. On information and belief, Robert signed the agreement. As discussed below, Keenan entered into the same agreement with AmMed.

(FAC at ¶ 35)[12] To be sure, Plaintiff does not have in its possession an executed version of a confidentiality agreement signed by Mr. Turbett—a fact that Defendants cite prominently in arguing that it is implausible that Mr. Turbett in fact signed the agreement. But Defendants have cited no authority for the proposition that a plaintiff can never plausibly plead that a defendant

---

[12] To the extent that Defendants take issue with Plaintiff's use of the phrase "upon information and belief" here and in certain other portions of the FAC, (D.I. 22 at 12-13; D.I. 34 at 7 n.6, 10-11), the Court does not view this as a hurdle to Plaintiff's plausibility argument regarding these two causes of action (or other causes of action to which such allegations relate). Defendants argue that Plaintiff cannot plead facts "upon information and belief" because Plaintiff has not and cannot allege that "the requisite factual information is peculiarly within the defendant's knowledge or control[.]" *McDermott v. Clondalkin Grp.*, 649 F. App'x 263, 267-68 (3d Cir. 2016) (internal quotation marks and citation omitted). Yet the offending paragraphs at issue all relate to interactions between AmMed and Mr. Turbett. (*See* FAC at ¶¶ 35, 42-44) And AmMed filed for bankruptcy protection in 2014 and dissolved in 2016. (*Id.* at ¶¶ 69-70, 72) It seems at least plausible, then, that—at least as between AmMed (now a defunct entity) and Mr. Turbett (who is an active party in this suit)—the information at issue *is* peculiarly within Mr. Turbett's knowledge or control. (Tr. at 22-24)

signed an agreement if the plaintiff does not have a signed copy of the agreement in its possession.  (Tr. at 50-51; *see also id.* at 54-55)  And in fact, Delaware state courts have held to the contrary.  *See Broesler v. Wardens & Vestry of St. Barnabas Episcopal Church*, C.A. No. 10C-04-222 FSS, 2011 WL 2174924, at *4 (Del. Super. Ct. Feb. 28, 2011) ("No rule says a breach of contract is subject to dismissal merely because the plaintiff fails to attach a signed copy.  For now, an unsigned copy accompanied by specific allegations will do."); *see also BVOIP LLC v. Callinize, Inc.*, C.A. No.: N18C-10-105 VLM, 2019 WL 1502288, at *2 (Del. Super. Ct. Apr. 4, 2019) (same).

Moreover, there are plenty of facts pleaded in the FAC to make out a plausible case that Mr. Turbett *did* sign the agreement, including:

- We know that AmMed *sought* Mr. Turbett's signature and sent him the agreement.  (FAC at ¶ 35)

- Plaintiff alleges that the whole point of providing the confidentiality agreement to Mr. Turbett was so that, once he signed it, AmMed could begin sharing confidential information with him.  (*Id.*)  And after sending the agreement to Mr. Turbett, AmMed did, in fact, share confidential information with him.  (*Id.* at ¶¶ 41-44)  One can thus plausibly infer that the reason *why* AmMed started sending confidential information to Mr. Turbett was that Mr. Turbett actually signed the agreement.

- AmMed employed Ms. Keenan in a similar position to Mr. Turbett's position, and Ms. Keenan signed a confidentiality agreement.  (*Id.* at ¶¶ 5, 35, 52)  Why would AmMed have Ms. Keenan sign a confidentiality agreement and not have Mr. Turbett do the same?

- AmMed filed for bankruptcy in 2014, later dissolved, and Plaintiff ultimately acquired all of its assets.  (*Id.* at ¶¶ 69-70, 72)  This makes it somewhat more understandable why Plaintiff might not have the signed copy of an executed agreement between AmMed and Mr. Turbett (as opposed to a scenario where *Plaintiff itself* entered into the agreement with Mr. Turbett, wherein the Court would tend to expect that Plaintiff would be able to produce a copy of such an agreement). (Tr. at 22-24)

Taking all of these allegations together, they indicate that AmMed and Plaintiff made "reasonable efforts" to maintain the secrecy of the trade secrets at issue.[13] And so, the Court recommends that Defendants' Motion to Dismiss be DENIED as to the Fourth and Eleventh Causes of Action.

### 2. Breach of Contract Claim (Eighth Cause of Action)

Plaintiff brings this breach of contract cause of action against Mr. Turbett individually. (FAC at ¶¶ 176-85) Pursuant to Delaware law, which is at issue here, a plaintiff states a breach of contract claim by alleging facts that support the following elements: (1) the existence of a contract; (2) the breach of an obligation imposed by that contract; and (3) resultant damages to the plaintiff. *Pharm. Corp. of Am. v. Askari*, C.A. No. 16-1123-RGA-MPT, 2018 WL 2108200, at *5 (D. Del. May 7, 2018); *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 883 (Del. Ch. 2009).

The contract that is alleged to have been breached here is the confidentiality agreement, referenced above, that Plaintiff asserts was executed by Mr. Turbett. (FAC at ¶ 182) And with

---

[13]     *Cf. Alpha Pro Tech, Inc. v. VWR Int'l LLC*, 984 F. Supp. 2d 425, 439-40 (E.D. Pa. 2013) (denying the defendant's motion to dismiss and concluding that the plaintiff's efforts, which included (1) confidentiality requirements for employees and contracting parties, and (2) conditioning receipt of confidential information upon such agreements, sufficed to plausibly establish reasonable efforts to maintain secrecy); *Brightstar Corp. v. PCS Wireless, LLC*, C.A. No. N18C-10-250 PRW CCLD, 2019 WL 3714917, at *7 (Del. Super. Ct. Aug. 7, 2019) (noting that in Delaware state courts, "[t]he reasonable efforts requirement is not a high bar" and that while "[b]are legally conclusive assertions are inadequate; confidentiality provisions or policies intended to prevent unauthorized disclosure are sufficient") (internal quotation marks, citations and footnotes omitted). Indeed, it is worth noting that the opinions to the contrary cited by Defendants were issued at the summary judgment or post-trial stage—that is, after the plaintiff was provided the chance to develop a full factual record. (D.I. 34 at 7 n.5 (citing *Atl. Med. Specialists, LLC v. Gastroenterology Assocs., P.A.*, C.A. No. N15C-06-245 CEB, 2017 WL 1842899, at *11-12 (Del. Super. Ct. Apr. 20, 2017) (summary judgment) and *Triton Const. Co. v. E. Shore Elec. Servs., Inc.*, Civil Action No. 3290-VCP, 2009 WL 1387115, at *22 (Del. Ch. May 18, 2009) (post-trial)).

their Motion to Dismiss, Defendants argue that this claim should be dismissed because Plaintiff cannot plausibly show that Mr. Turbett actually signed that contract (i.e., Defendants challenge the sufficiency of pleading as to the first "existence of a contract" element). (D.I. 22 at 12-13; D.I. 34 at 10) For all of the reasons set forth above in Section III.B.1, the Court disagrees. And so the Court recommends that the Motion to Dismiss be DENIED as to Eighth Cause of Action.

### 3. Unjust Enrichment Claim (Tenth Cause of Action)

In Plaintiff's Tenth Cause of Action, it brings a claim for unjust enrichment against Mr. Turbett. (FAC at ¶¶ 192-99) Unjust enrichment requires a plaintiff to plead, among other elements, an enrichment to the defendant and an impoverishment to the plaintiff. *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010); *Vichi v. Koninklijke Philips Elecs. N.V.*, 62 A.3d 26, 58 (Del. Ch. 2012). And in their opening brief, Defendants' only challenge to this cause of action was that Plaintiff failed to plausibly allege such an enrichment and impoverishment. (D.I. 22 at 18)[14]

Here Plaintiff argues, and the Court agrees, that Plaintiff has sufficiently alleged that Mr. Turbett was unjustly enriched by accessing and using Plaintiff's confidential information and trade secrets, and that this created an impoverishment to Plaintiff (in that Plaintiff, who otherwise had a right to have the information kept confidential, was not provided any consideration by Mr. Turbett or others in return for the use of that information). (FAC at ¶¶ 74, 196-97; D.I. 29 at 17) Thus, the Court recommends that Defendants' Motion to Dismiss be DENIED as to the Tenth Cause of Action.

---

[14] The Court declines to consider Defendants' argument that this claim is wrongfully duplicative of Plaintiff's trade secret misappropriation claim, (D.I. 34 at 12), as that argument was raised for the first time in Defendants' reply brief.

### 4. Lanham Act and Delaware Deceptive Trade Practices Act ("DDTPA") Claims (Twelfth and Thirteenth Causes of Action)

In Plaintiff's Twelfth and Thirteenth Causes of Action, it respectively brings federal (Lanham Act) and Delaware state law (DDTPA) claims for false advertising against Turbett Surgical. (FAC at ¶¶ 212-58) Plaintiff's theory, in short, is that Defendants' claim that their POD device "has a validated 10 minute dry time[,]" (*id.* at ¶ 235), is false and/or misleading, in that it suggests that the FDA has approved the POD device for such use, when, in fact, the FDA has approved it only for a *30 minute* dry time, (*id.* at ¶¶ 235, 243-46, 256; Tr. at 92)

Defendants challenge Plaintiff's false advertising claims on two principal grounds:[15] (1) that Plaintiff has inadequately alleged a false or misleading statement as required by the Lanham Act and the DDTPA and (2) that Plaintiff has inadequately alleged under the Lanham Act that Defendants' statements amount to "commercial advertising or promotion." (D.I. 22 at 18-20; D.I. 34 at 13-14) The Court will analyze these arguments in turn.

As to Defendants' first argument, the Court understands the key issue to be Defendants' representation that their 10-minute dry time is "validated." (D.I. 22 at 19; Tr. at 91, 94) For a statement to be actionable for false advertising under Section 43(a) of the Lanham Act, it must be either false on its face or, although literally true, likely to mislead and to confuse consumers given the merchandising context. *See, e.g.*, *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 943 (3d

---

[15]        Defendants also argue that: (1) Plaintiff's false advertising claims should be evaluated under the heightened pleading standard of Federal Rule of Civil Procedure 9(b); and (2) Plaintiff's claim under the Lanham Act is precluded by the federal Food, Drug and Cosmetic Act. (D.I. 22 at 18 n.6 & 19 n.7) Defendants make these arguments entirely in footnotes in their opening brief. (*Id.*) "Courts traditionally do not consider arguments presented entirely in the footnotes[,]" *Lord Abbett Affiliated Fund, Inc. v. Navient Corp.*, 363 F. Supp. 3d 476, 497 (D. Del. 2019) (citing cases), because burying one's arguments in a footnote leads to insufficient briefing of the issues (as it did here) and inefficiency for the Court. (Tr. at 84, 91) For these reasons, the Court declines to consider these arguments here.

Cir. 1993); *Hologic, Inc. v. Minerva Surgical, Inc.*, Civ. No. 15-1031-SLR, 2016 WL 3129617, at *2 (D. Del. June 2, 2016).[16] And in the FAC, Plaintiff has, at a minimum, plausibly alleged that Turbett Surgical's statements in this regard were misleading in certain ways. That is, Plaintiff alleged that: (1) the FDA has approved Defendants' POD device for a 30-minute dry time, (FAC at ¶ 242); (2) despite this, Defendants have been representing that the POD has a "validated 10 minute dry time[,]" (*id.* at ¶¶ 235-38); and (3) this representation misleadingly suggests, for example, that the FDA has "validated" this dry time (when that has not in fact occurred), or that the validation came after testing of the POD pursuant to certain conditions (when in fact those conditions were not in place) or that the validation indicated that the POD was safe and effective using a 10-minute dry time (when that is not so), (*id.* at ¶¶ 246(a)-(f), 249 (a)-(f); Tr. at 92-95).

With regard to Defendants' second argument, the "touchstone" of whether a defendant's actions amount to the required form of "commercial advertising or promotion" is "'that the contested representations are part of an organized campaign to penetrate the relevant market.'" *Synthes, Inc.*, 2012 WL 4205476, at *31 (quoting *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.,* 314 F.3d 48, 57 (2d Cir. 2002)). "Proof of widespread dissemination within the relevant industry is a normal concomitant of meeting this requirement." *Fashion Boutique*, 314 F.3d at 57; *see also Synthes, Inc.*, 2012 WL 4205476, at *31; *Deston Therapeutics LLC v. Trigen Labs. Inc.*, 723 F. Supp. 2d 665, 674-75 (D. Del. 2010). But here, Plaintiff has alleged that Defendants disseminated the advertisements at issue, *inter alia*, at national and international

---

[16] Similarly, for a false advertising claim to be actionable under the DDTPA, a plaintiff must allege that a defendant made certain misrepresentations about its product (such as about the product's "approval") or made statements about the product that cause a likelihood of "confusion or misunderstanding[.]" Del. Code Ann., tit. 6, § 2532(a).

trade shows, (FAC at ¶¶ 226, 236-37), online, (*id.* at ¶¶ 237-38, 245), and at hospitals, (*id.* at 247).  And additionally, Plaintiff has alleged that Defendants tout a "retrospective study" that makes similar product claims, (*id.* at ¶¶ 248), which they display at trade shows and republish online, (*id.* at ¶¶ 250-51).  This could well amount to widespread dissemination of the advertising at issue.  Thus, taking all of these allegations together, the Court concludes that they are sufficient to plausibly allege commercial advertising or promotion.  *See Deston Therapeutics*, 723 F. Supp. 2d at 674-75; *see also Gen. Sec., Inc. v. Commercial Fire & Sec., Inc.*, 17-CV-1194 (DRH) (AYS), 2018 WL 3118274, at *8 (E.D.N.Y. June 25, 2018).

For the reasons set out above, the Court recommends that the Motion to Dismiss be DENIED as to the Twelfth and Thirteenth Causes of Action.

## IV.  CONCLUSION

For the foregoing reasons, the Court recommends that Defendants' Motion to Dismiss be GRANTED-IN PART and DENIED-IN-PART.  More specifically, the Court recommends that Defendants' Motion be GRANTED as to the Fifth, Sixth, Seventh and Ninth Causes of Action and DENIED as to the Fourth, Eighth, Tenth, Eleventh, Twelfth and Thirteenth Causes of Action.  It also orders that Plaintiff's Motion to Exclude be DENIED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation.  Fed. R. Civ. P. 72(b)(2).  The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court.  *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R.

Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website,

located at http://www.ded.uscourts.gov.


Dated:  April 13, 2020

*Christopher J. Burke*

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE