IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PROGRESSIVE STERILIZATION, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 19-627-CFC-CJB |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| TURBETT SURGICAL LLC, TURBETT SURGICAL, INC., and ROBERT TURBETT, | ) | **PUBLIC VERSION** |
| | ) | |
| Defendants. | ) | |
| | ) | |
| TURBETT SURGICAL LLC, and TURBETT SURGICAL, INC., | ) | |
| | ) | |
| Counter-Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PROGRESSIVE STERILIZATION, LLC and PMBS, LLC, | ) | |
| | ) | |
| Counter-Defendants. | ) | |

**DEFENDANTS' RESPONSIVE DISCOVERY DISPUTE LETTER TO THE
HONORABLE CHRISTOPHER J. BURKE**

OF COUNSEL:

Erika N.D. Stanat
Jeffrey A. Wadsworth
HARTER SECREST & EMERY LLP
1600 Bausch & Lomb Place
Rochester, NY 14604
Tel: (585) 232-6500

Lauren R. Mendolera
HARTER SECREST & EMERY LLP
50 Fountain Plaza, Suite 1000
Buffalo, NY 14202
Tel: (716) 853-1616

Dated: November 23, 2020
PUBLIC VERSION
Dated: November 25, 2020
6949876 / 49228

David E. Moore (#3983)
Stephanie E. O'Byrne (#4446)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
sobyrne@potteranderson.com

*Attorneys for Defendants Turbett Surgical LLC, Turbett Surgical, Inc., and Robert Turbett*

**PUBLIC VERSION**
The Honorable Christopher J. Burke
Page 1

Dear Judge Burke,

      Defendants Turbett Surgical, LLC, Turbett Surgical, Inc., and Robert Turbett (collectively, "Defendants") submit this letter brief in opposition to Plaintiff Progressive Sterilization, LLC's ("Plaintiff") motion to compel (D.I. 100).

## **Defendants Are Moving Expeditiously And This Case Is On Schedule**

      Plaintiff's claim that Defendants have "dragged their feet" in this case is unfounded. By way of background, Plaintiff filed its original complaint on April 3, 2019. Extensive motion practice followed. After Defendants fully briefed a motion to dismiss, Plaintiff filed a First Amended Complaint on August 9, 2019. Defendants again filed a motion to dismiss, which was granted in part and denied in part as set forth in Your Honor's Report and Recommendation, dated April 13, 2020 (D.I. 45), and affirmed by Judge Connolly on June 10, 2020 (D.I. 51). Defendants then filed an Answer to the First Amended Complaint and Counterclaims on July 1, 2020 (D.I. 53). At Plaintiff's request, the parties agreed to extend Plaintiff's and Counter-Defendant PMBS, LLC's response to the Counterclaims until August 31, 2020 (D.I. 55). Plaintiff then took issue with six paragraphs of Defendants' Answer, and after meeting and conferring, Defendants agreed to amend. Nevertheless, Plaintiff filed a motion to strike anyway. (D.I. 61). Defendants amended (D.I. 67) and responded to the motion (D.I. 68), before Plaintiff ultimately withdrew its needless and wasteful motion to strike (D.I. 70).

      On July 27, 2020, the parties jointly submitted a proposed scheduling order, which was entered on July 30, 2020 (D.I. 64). That Order provides that all document production is to be completed by April 2, 2021 and all fact discovery is to be completed by July 2, 2021. On July 28, 2020, at its very earliest opportunity following the parties' Rule 26(f) conference, and prior to responding to Defendants' counterclaims or having any discussion about ESI or Confidentiality Orders, Plaintiff served its first set of interrogatories and 111 requests for production of documents ("RFPs"). By agreement, Defendants promptly served objections and responses to each set of discovery requests on September 4, 2020. On September 3, 2020, the parties submitted a proposed Stipulated Confidentiality Order and a proposed Stipulated ESI Order (D.I. 79), which were entered September 9, 2020. (D.I. 81 and 82).

      In the ESI Order, the parties agreed that a producing party could use search terms to identify responsive ESI and that the requesting party may add up to 8 additional focused ESI terms beyond what their opponent proposed. (D.I. 82 at ¶3(a)(ii)). Accordingly, Defendants sent Plaintiff's counsel a letter on September 30, 2020 outlining applicable custodians and more than 30 search terms they intended to use for searching for responsive electronic documents. (D.I. 100, Ex. M). Despite the ESI Order's limitations, Plaintiff then proposed more than 30 additional terms, refused to narrow or otherwise prioritize them, and now moves to compel their implementation.

      Defendants have been reviewing documents notwithstanding the present dispute, and have, to date, made four document productions on October 1, 2020, October 24, 2020, October 29, 2020, and November 20, 2020. These productions have totaled more than 440 documents and more than 3000 pages. Defendants expect to make their next production shortly

PUBLIC VERSION
The Honorable Christopher J. Burke
Page 2

after the Thanksgiving holiday, and as discussed with Plaintiff on several meet and confers, intend to continue their rolling production of documents over the next several weeks.[1]

Despite the reasonable approach that Defendants have used in responding to some 200 discovery requests and making multiple productions of documents since the entry of the Confidentiality and ESI Orders in September, Plaintiff brings a list of eleven discovery "disputes" to this Court. Ironically, while demanding that all of Defendants' document discovery be completed by December 16, 2020, Plaintiff has yet to respond to Defendants' first Interrogatories or RFPs served October 13, 2020, having requested through the date of this letter to serve its first responses. As discussed below, each discovery issue that Plaintiff now brings to this Court is moot or baseless. Plaintiff's motion to compel should be denied, and Defendants should be awarded their costs in connection with responding to the motion.

**1.[2] Defendants' production timeline**: Consistent with Rule 34(b)(2)(B), in responding to the first set of 111 document requests, Defendants specified that they would produce documents on a rolling basis, with initial productions occurring in October and all responsive documents being produced at the latest by the April 2, 2021 deadline set forth in the Scheduling Order. The rolling production is sensible, and in fact necessary, given that ESI search terms remain unresolved (as discussed in number 11 below). To date, rather than waiting until the search term issue is fully resolved, Defendants have been reviewing and producing documents with steady progress based on their initial set of 30-plus proposed search terms for ESI review.

Plaintiff's statement that its second set of requests is "waiting in the wings," as though Defendants need to complete production of the first 111 categories of requests before then moving on to the next 73 requests, misunderstands the review and production process for ESI. Defendants have collected and are storing ESI material in a Relativity database for review and production; working through that information is an ongoing process, which leads to the rolling production that Defendants have reasonably undertaken. That rolling production also allows for refinements to include additional documents in response to the second set of requests, rather than forcing a completely new second review of the same ESI material. Defendants' approach is reasonable and fully consistent with the discovery schedule. Plaintiff's position that Defendants produce all responsive documents by mid-December is both unreasonable and impossible.

**2. Definition of "Mobile Sterilization Systems"**: Plaintiff's definition of "Mobile Sterilization System" was plainly intended to capture the multiple tray sterilization systems referenced in the complaint (e.g., SCORES, the CUBE, the POD). Defendants understood this but objected to the definition to clarify that the POD does not actually "sterilize" anything, as the "sterilization" portion takes place in the autoclave, which is not part of the POD (or SCORES or the CUBE). Nevertheless, Defendants made clear that they knew what Plaintiff meant, and Turbett Surgical stated expressly that it would "respond regarding its rigid containers for use in

---

[1] Plaintiff served a second set of interrogatories and RFPs on October 14, 2020. Plaintiff's second set of document requests increased the number of categories of documents requested from 111 to 184. Defendants timely served responses to this second set of RFPs on November 16, 2020.

[2] For ease of reference, Defendants set forth their individual responses to Plaintiff's alleged disputes using the same numbering that Plaintiff used in its opening letter brief.

PUBLIC VERSION
The Honorable Christopher J. Burke
Page 3

sterilization of instruments known as the 'Turbett Surgical Containers' and/or the 'Instrument PODs.'" (D.I. 100, Ex. E, at 2). Notably, to obtain information about things like "carts" and "filters," Plaintiff did not include them in its definition of Mobile Sterilization Systems, but instead defined "Identify" to include "components" and "accessories," and expressly included "carts" and "filters" as examples of such components or accessories (D.I. 100, Ex. A, at 4 (definition 12(d)(8))). Thus, when Plaintiff asked Defendants to "identify" the Mobile Sterilization Systems, Defendants properly included in their responses information about such "components" and "accessories." (D.I. 100, Ex. E, at 7-8 (response to Interrogatory No. 2)).

So, while Plaintiff now contends (for the first time) that "Defendants' definition unduly narrows the scope of alleged accused products to exclude apparatus *such as the carts* used to transfer the containers" (D.I. 100), that is simply because Plaintiff expressly excluded "carts" from the definition and instead made clear that "carts" were components or accessories. In any event, Defendants identified this information in their response.

This is not a dispute on the discovery served; Plaintiff simply seems to have had second thoughts about the definition it used in its July 28, 2020 discovery requests. Indeed, Plaintiff's newly-proposed definition contained in its letter brief bears little resemblance to the definition in its requests, and suffers from other problems, like its circular use of "apparatus, products, devices, processes, methods, acts, or instrumentalities *for mobile sterilization systems*," as its definition *of* mobile sterilization systems.

3. **Identifying Mobile Sterilization Systems that do not yet exist**: Plaintiff's Interrogatory No. 2 asks Defendants to "[i]dentify any Mobile Sterilization System that you or persons acting on your behalf make, use, sell or offer for sale, or import into the United States, previously, presently or in the future." (D.I. 100, Ex. A, at 7). Defendants did so by identifying all the Mobile Sterilization Systems that Turbett Surgical has made, used, sold, and offered for sale. Defendants objected to the extent that they could not respond as to what Turbett Surgical might (or might not) make, use, sell, or offer for sale "in the future." Contrary to Plaintiff's argument in its letter brief, the Interrogatory did not ask about Defendants' plans, it asks that Defendants "identify" the applicable Mobile Sterilization Systems.

Plaintiff's citation to *Bigband Networks, Inc. v. Imagine Communs., Inc.*, 2010 U.S. Dist. LEXIS 72740, at *3-5 (D. Del. July 20, 2010) is misplaced. There, the court explained that "products which have not yet been released for sale to consumers may still be found to infringe," and thus the source code for such future products is discoverable. *Id.* at 5. The court emphasized that the patent infringement statute covers not just sales or offers for sale, but also the unauthorized "mak[ing]" or "us[ing]." Defendants understand this. But they still cannot identify a product that Turbett Surgical has not yet "made" or "used." If it already exists, then it was included in Defendants' response. There is no real dispute here.

4. **Cut-off date for relevant time period**: Plaintiff included no temporal limitations in its discovery requests. Defendants' position is that for most categories of document requests, the cut-off date for responsive documents should be the date that the lawsuit was commenced, when

PUBLIC VERSION
The Honorable Christopher J. Burke
Page 4

Plaintiff asserted its claims.[3] After Plaintiff raised concerns about Defendants' objection, Defendants asked Plaintiff to identify those topics or specific document requests that it believed required production of documents created after the filing of suit. Defendants suggested during a meet and confer, for example, that they were amenable to producing documents created after the commencement of the litigation that contain sales information that might bear on Plaintiff's damages model. Plaintiff refused to alter its position, however, and insisted on no time limitation for any of its 111 requests. As a compromise, Defendants agreed to produce electronic documents that were captured in their December 2019 collection of ESI. Plaintiff was still unsatisfied and refused to agree to even the December 2019 cut-off date. Plaintiff apparently has no cut-off date in mind, but suggests that Defendants are required to constantly collect, review, and produce documents throughout the entirety of this action in response to all of its requests.[4]

Plaintiff's position is unreasonable. Defendants should not have to undergo the expense and burden of multiple wholesale collections of ESI.[5] If there are specific documents created after December 2019 (like those with sales information) that are relevant and for which there is a reasonable basis to incur the burden associated with a subsequent collection, Defendants are willing to update their production with those targeted documents at the end of fact discovery. The Court should deny Plaintiff's request until such time, if ever, a dispute arises in this regard.

   5. **Mr. Turbett's response to interrogatories 3, 4, and 5**: In addition to Turbett Surgical, Plaintiff also served interrogatories on Mr. Turbett himself. Interrogatory Nos. 2, 3, 4, and 5 seek information from Mr. Turbett about things that he cannot answer in his individual or personal capacity. These interrogatories ask him to identify information about Turbett Surgical's POD product, and improvements or changes to the POD product. Mr. Turbett responded to these interrogatories by noting that the products are Turbett Surgical's, not his, and they are not made on his behalf. (D.I. 100, Ex. F). Notably, Plaintiff asked these same interrogatories of Turbett Surgical, and Turbett Surgical provided complete responses. (D.I. 100, Ex. E). Again, it is not clear why Plaintiff is bringing this "dispute" to the Court.

   6. **Production of all emails with certain email accounts**: Defendants will produce documents from the penturbett@aol.com email account. Defendants' objection to RFP 71 is that Plaintiff seeks "all emails" between that email account and a whole host of other individuals and entities, without any time or subject matter restrictions. Defendants have acknowledged that for some of those listed in RFP 71, a broad request is acceptable—like Barry Snyder, Maryellen Keenan, Michele Mauzerall, or AmMed—because any email with those individuals or entities is likely to be related to the claims and defenses in this action. But for the many others listed that are either third parties or connected to Turbett Surgical (e.g., David Furr, FDC Services LLC, St.

---

[3] Plaintiff already endorsed that concept in the ESI Order, which expressly excludes "information generated after the filing of the complaint" from the parties' privilege logs. (D.I. 82 § 2(d)(ii)).
[4] Plaintiff misunderstands the import of Rule 26(e). The parties have an obligation to supplement their discovery responses upon learning that a prior response is incomplete or incorrect, but Rule 26(e) does not create an ongoing and constant obligation to search for and produce documents responsive to all document requests throughout the duration of the case.
[5] ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅

PUBLIC VERSION
The Honorable Christopher J. Burke
Page 5

Peters, SPS, Moog, Inc., Ethox International, Joe Brown, Tom Plis, Beth Loring, Rachel Rosenberg, Farm, Turbett Medical, and Rick Richmond), proportionality requires there to be some limitation as to the timing and subject matter of the communication. Defendants propose to produce only those emails with these individuals or entities that relate to AmMed, Barry Snyder, Clarence Snyder, and/or SCORES. Plaintiff's interest in the exchange of emails between these accounts to determine if AmMed's allegedly confidential or trade secret material was passed to or disclosed by Mr. Turbett should be satisfied by that subject matter limitation.

   **7. Production of all emails with other email accounts**: In RFPs 95, 96, and 98-101, Plaintiff similarly seeks "all emails" that were sent to or received from various third parties without any time or subject matter restrictions. Plaintiff again claims this discovery is relevant to identifying the "pathways" through which AmMed's alleged trade secrets and confidential information flowed. For the reasons discussed above, the subject matter should be limited to those emails regarding AmMed, Barry Snyder, Clarence Snyder, and/or SCORES.

   **8. Overbroad requests regarding non-party Turbett Medical**: In RFPs 103 and 104, Plaintiff seeks documents regarding the formation of Turbett Medical and communications between Turbett Medical and AmMed, Barry Snyder, and Clarence Snyder. Defendants object because Turbett Medical is not a party to the action. Nor is it a legal corporate entity, and documents about its formation would be irrelevant anyway. As a practical matter, any communications between "Turbett Medical" and AmMed, Barry Snyder, and Clarence Snyder will be otherwise captured by Mr. Turbett's emails.

   **9. Documents regarding person of ordinary skill in the art**: There is no dispute regarding RFP 17. Defendants agreed to produce responsive documents that are in their possession when Defendants first define a person of ordinary skill in the art. (D.I. 100, Ex. J, p. 2).

   **10. Timeline for providing privilege log**: A privilege log identifies those responsive documents that have been withheld on the grounds of privilege. Privilege logs thus naturally follow document review and production. Unlike rolling productions of documents, however, providing rolling privilege logs is atypical and increases expense with little, if any, benefit. Defendants estimate that they will be in a position to provide their master privilege log approximately 2-3 weeks after completing document production (which will be months before the July 2, 2021 end of fact discovery).

   **11. Plaintiff's proposed addition of 30-plus ESI search terms**: The parties agreed in their Stipulated ESI Order that Defendants would provide a list of ESI search terms, and then Plaintiff could add up to 8 more focused search terms. Defendants offered a good-faith list of more than 30 initial search terms (D.I. 100, Ex. M), which captured nearly 21,000 document hits for review (8,300 after threading). Plaintiff has refused to limit itself to 8 additions and will not even prioritize its proposed list of 30-plus additional search terms. Rather than wildly throwing out dozens of additional ESI search terms, Plaintiff should adhere to the parties' agreed ESI search methodology and its balanced approach to electronic discovery. The burden and expense associated with employing Plaintiff's 30-plus additional ESI search terms far outweighs any conceivable benefit, and is vastly disproportionate to the needs of the case, the parties' resources, the relative access to information, and the amount in controversy. Fed. R. Civ. P. 26(b)(1).

**PUBLIC VERSION**
The Honorable Christopher J. Burke
Page 6

Respectfully,

*/s/ Stephanie E. O'Byrne*

Stephanie E. O'Byrne

SEO/lmf/6949876/49228
cc:  Counsel of Record (Via Electronic Mail)